United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Thank you. Good afternoon. Good afternoon. Our first case for this afternoon is 2020-604-65 Jeffrey K. Davis v. United States Marshals Service et al. We will begin with Mr. O'Donnell. Thank you, members of the court. I appreciate the opportunity to be here this afternoon. Although the Zoom platform is new to me, so I hope there aren't any glitches or anything that we can't overcome this afternoon. I'm sure things will work out fine. We can hear you perfectly and see you very well. Excellent. Thank you. Although I do miss the opportunity to be in New Orleans another time. On behalf of the appellate and plaintiff, Jeff Davis, I'm David O'Donnell. In this case, your honors, we have an issue of pleadings. It's an issue of whether or not the amended complaint in our case stated a breach of contract and due process against the Marshals Service and two individual defendants, Mr. Harlow and Mr. White, and a related claim against Metropolitan Security or as we might refer to them today as Walden. They are the entity that provides court security services under a contract with the Marshals Service within the Fifth Circuit. So as a pleading issue in terms of whether or not the complaint states a plausible claim for breach of contract and due process in this case, the review on the front end is de novo, so there's no deference paid to the district court's decision. But number two, under the standard the facts are treated as true and any reasonable inference within the facts related in the amended complaint is to be indulged in favor of the plaintiff, Jeff Davis. What errors do you believe that the district court made? Well, your honor, I believe if we're talking about the breach of contract claim, I think the court was wrapped in an analysis of whether or not Mr. Davis had standing under the contract between the Marshals Service and Walden, did not address subject matter jurisdiction, which the court I'm sure will have questions about this afternoon. Those are questions that the court can take up as the court is well aware, but became I think confused about whether or not Mr. Davis has standing. And I think our arguments with regard to whether the Marshals Service and Walden are joint employers is I think our strongest argument as far as whether Mr. Davis has standing to raise the elements that are provided in the Walden Marshal Service contract in terms of raising his claim for breach of contract. And then ultimately, of course, his due process claim. Now, just so a number of these Marshal Service claims and evolving, there were a whole series of them involving hearing loss test a few years ago, so there are a lot of them across the country. And some of them have to do with there's a union involved. Is there a union involved in this one that's pled or they're not the union in this one? Judge Elrod, no, there's no union. There's no collective bargaining agreement at stake in this case. Okay. And that's why I thought that was a difference between this and some of the other ones. Is Ruiz versus Mukasey your best case for the idea that it's a joint employer or what is your best case? Well, Walton and Ruiz are both cases that we would rely on. There's a series of cases, as the court's probably aware, concerning that very issue in different contexts, although I believe that the context themselves are not material to the issue here. That is, can a joint employer test be applied in this case? I think clearly it does have application. I think any of the analysis presented in any of the Rehabilitation Act cases or ADA cases or Title VII cases, which have considered whether the marshal service and their contract security agency or joint employers is equally applicable here. Can I back up just a little bit? The nature of the employment agreement, I should say, between Walden and Mr. Davis, is that any type of written contract or is he an at-will employee of Walden? Your Honor, there is a letter that went out to Mr. Davis from Walden when he was initially offered employment. That letter contains the terms of Walden's perspective that Davis's employment would be at will. It's a form letter that went out. There's nothing else in terms of writing that might explain or delineate the terms of the conditions of his employment with Walden. One more question along those lines. Is there anything that suggests that his placement in the position that this litigation is about, is there anything to suggest that his placement was conditioned on the official approval from whoever at the U.S. marshal service? I should say anything in writing or formalized. Well, yes, that same letter, Your Honor, states that Mr. Davis's employment would be subject to the approval of the marshal service. And that's what we believe also supports and brings in the contract between Walden and the marshal service, because that is every bit germane and material to the conditions of Mr. Davis's employment. Theoretically, I realize this may not be what's not in the briefs, but theoretically, I don't know anything about Walden's business, but he could work for Walden, but not in this position that the marshal service would have any approval for. Is that correct, also? In other words, he could be placed somewhere else in the employ of Walden, but not in a position that involves the marshal service. Practically speaking, I don't think that was the case. I think doubly so with regard to the adverse suitability determination. I think that foreclosed Mr. Davis from any meaningful employment. So there's no evidence or record of that at this point. I've got a question about your due process claim. Yes, sir. Which specific defendant or defendants are you bringing that against? We're bringing against both David Harlow and Thomas White. As the amended complaint relates, I'll try to hold my comments about what happened in terms of what's alleged in the amended complaint, but it states that Mr. Harlow and Mr. White were both instrumental in that process of denying, terminating Mr. Davis's employment, and ultimately denying any explanation. And refusing any explanation when Walden and Davis both requested some form of explanation. Quick question. So Harlow and White, they're both federal employees, right? Federal officers. Yes, sir. Harlow is the acting director and Thomas White was the acting assistant director of the Office of Court Security. I ask because your complaint says the due process claim is brought under 1983 and under Bivens, but regarding the 1983 claim, there are no state actors here, right? There are just two federal actors. That's correct. That's the due process claim, correct? That is correct. Okay. So you would concede there's no 1983 claim against Harlow and White? I do concede that. I think that reference was included as a matter of how a court would approach a Bivens claim would be the same nomenclature elements that a 1983 claim would be looked at. But yes, the court's correct. What specifically would you like us to hold today? Well, what we'd like, our requesting is that the court remand this case, allow us to conduct discovery, allow us to ask the marshal service why. We think the contract between Walden and the marshal service gives Mr. Davis that contractual right to know why he's terminated. There are some dance in the briefs before the district court about whether Mr. Davis was actually hired. He clearly was hired. As the amendment complaint alleges, we're talking about 12B6 standard, but there really is no genuine issue. We were talking about a summary judgment issue here, but he was hired and then terminated without explanation. And there's two provisions in the contract, the suitability provisions and section 8.9, it gives Mr. Davis the right to be told why, and then to be given an opportunity to contest why. Those are valuable contractual rights, and he was not permitted that opportunity. And we refer to the aspect of the appeal that gets into the motions to compel discovery, a subsidiary issue, but an important one because it illustrates the lengths to which we ask why, and the lengths to which the marshal service refused to say why. And I would point out as well in this point that Walden asked why. We don't take issue with Walden because it asserted the right to know why, and it was stonewalled just like Mr. Davis was. And so, we ask for the opportunity to know why. Give us the opportunity to be heard. Quick question about your Bivens claim. I mean, as you know, the Supreme Court has allowed kind of Bivens liability in three and only three circumstances, and can you explain why this would not be extending Bivens to a new context? Well, that is a difficult question for me because, again, the standard about allowing a Bivens claim, as the Court's well aware, is a difficult one to achieve, but there are a number of cases. There's a few cases that we've cited in our brief about whether a Bivens remedy would be available, and that is, does Mr. Davis have the right to pursue a procedural due process claim against the marshal service, or in this case, given the 11th Amendment immunity, against the two individual defendants? I think that right is there. I don't think it's an unusual right, so therefore, under a Ziegler case, we don't fit within the, is this a new case? It's a procedural due process case. I think the Passman case is sufficiently analogous, but there are other cases subsequent to that decision that do talk about and provide that remedy, and specifically in the marshal service context, cases brought by CSOs for the denial of a due process right. I'm sorry, go ahead. I finished answering Judge Willett's question. So that's, we would say that it's not a novel case, but if it is a novel case, then we would say that given the complete absence of remedy, alternative remedy to Mr. Davis, that he's left with a due process claim here, and I think, therefore, it would be, there's no special factors that would counter the allowance of a due process claim for Mr. Davis, and I think that's how the Ziegler criteria are set up, or at least explained in that case. There's nothing that would suggest that it would be inadvisable for the court to extend a Bivens remedy in this case. Mr. O'Donnell, assuming that I, we agreed with you, arguendo, that they were joint employers, I'm not sure it gets you anywhere, and the district courts seem to think it didn't get anywhere, because, I mean, if this were a retaliatory discharge claim under the employment laws, then certainly you could pursue that, but that's not what this is, so I'm trying to figure out how does the joint employer help you here. The joint employer helps us because it gives us standing to pursue the contraption remedies in the Walden marshal service contract. Right, but have there been a breach of the, I mean, I guess you've pled it, and we should move on because the district court got hung up on the standing, and they should go back and look at that. I'm just not sure where you get, because you don't have a retaliatory discharge claim under some whistleblower statute, do you? Well, you know, of course, the complaint alleges and sets out a separate whistleblower reprisal claim, but as the pinball analysis has gone for us in the administrative proceedings and then on to the district court, Mr. Davis happens to fit within a very novel and narrow crack there that he's alleging that he was a former U.S. marshal, and he engaged in whistleblowing activities, and that was resolved. He retired in good standing, and he happened to come into a position that the marshal service was interested in and controlled as a joint employer, and they terminated his services, we allege, because of his whistleblowing activities, but he's not a member of the civil service. He's not a protected position as far as the statutory whistleblower provisions are concerned, so that leaves us out there, I believe. But the joint employer gives us the right to pursue these contractual remedies, gives us standing. Mr. O'Donnell, you saved time for rebuttal, and we will now hear from Ms. Lopez. May it please the court, Carolyn Lopez on behalf of the federal defendants. I want to make sure that I'm addressing each of your honors questions, particularly with respect to the breach of contract claims and the Bivens claims. I think the fundamental defect here that plaintiff can't get around is, as your honors pointed out, this case is very different than some of the Rehab Act cases. Here, the contract that he had directly with his employer said it was an at-will contract, and what he tries to do is get around that at-will contract, which really gives people very little rights, if any, particularly where it's further contingent on additional approval, and what he tries to do is piggyback off of a federal contract for the procurement of services that's between Walden and the Marshals, and he's just not a party to that contract. And as we explain in our brief, that's actually a fundamental subject matter jurisdiction problem, because it is a CDA contract, it's actually only the contractor who has, whether one calls it standing to sue, as the Second Circuit explains, and in its case, Atterbury, which involves some of the very same provisions in Marshals contracts with security service contractors, or whether you think of it as the CDA says only a contractor is able to sue, and therefore the United States hasn't waived its sovereign immunity with respect to claims brought by contractor's employees. And so that's- Ms. Lopez, can you help us, though? What if this causes some discomfort, and sometimes the law does cause some discomfort, so that's not always a winning argument, that discomfort in itself, but the fact, so what if the Marshals Service, and this is a hypothetical, said, we don't want him because of his race, and we get to make the final choice, and so even though you've already hired him, you can't hire him. Where's his remedy there? So, Your Honor, of course, that is far afield from the allegations here, and here, I do just want to step back for one moment before I get to that, to say that here, Congress has specifically thought about whistleblower reprisal claims in two different statutes. So there's the statute that plaintiff erroneously relied on here that's not available to him, which is the one only for covered federal employees, but Congress did actually go back in this context, and we discussed this in the brief. It's 41 U.S.C. 4712, and that actually allows for suits directly against the contractor by contractors of employees, assuming that he is actually an employee and not sort of in a contingent offer situation, and that includes for actions taken by the contractor at the express direction of the executive, subject to certain additional limitations. So why isn't that available then? I mean, he hasn't pled that claim, but to be clear, could he amend his complaint to plead that claim? No, Your Honor, he's had ample time. He's already had the opportunity to amend his two responses that the first is that the district court acted well within its discretion here to say that when he had already been allowed to amend his complaint, and that's after here, crucially, the federal government had already filed a motion to dismiss, pointing out the various jurisdictional deficiencies with his argument. So both... Okay, so what's the answer to the hypothetical? And then, sorry, just to close the loop on that one whistleblower retaliation claim, which is the facts here, the remedy lies only directly against the contractor, not against the United States. The United States has made clear that it has not... sort of waivers of sovereign immunity have to be clear and unequivocal, and here it's just the opposite. The United States Congress has thought about this quite a bit and hasn't provided a remedy. Okay, can you answer my hypothetical? Absolutely, Your Honor, and with respect to a racial discrimination claim, you know, I'm not his attorney, but is there a provision... Can Walden be liable if they didn't hire, if they took away his offer because the marshal service said don't hire him because of his race, or could the marshal service be liable as a joint employer or otherwise in that circumstance? Your Honor, any remedies that he may or may not have were this instead of racial discrimination case would be under Title VII in the Rehab Act, and for the reasons that we describe in distinguishing, for example, his joint employee... the cases cited on the joint employer theories, those contexts are quite different than... So could they be liable under Title VII as joint employer, the marshal service in that circumstance? Your Honor, I can't standing here today get out ahead of the United States and say in a hypothetical case in which we're... in which there are accusations that the United States was liable for sort of interfering with an employment relationship in which the United States was not actually the person's employer. I can't standing here today tell you yes or no that the United States would think that had waived its sovereign immunity through Title VII or the Rehab Act for plaintiffs who are not the United States employees. But we have a lot of cases in the rehab context, especially these hearing cases that were popular for several years where the U.S. marshal service was liable, right? Yes, Your Honor, there have been some cases... there have been some cases in which they did, but most of those cases actually were just... ended up being dismissed on other grounds. For example, I apologize, I forget the name of the D.C. Circuit case, but the D.C. Circuit case that talks about this, for example, actually doesn't reach the joint employer. Often courts don't actually reach the joint employer. But the Ruiz v. McCasey from our own Southern District of Texas most explicitly did. Yes, Your Honor, and I do want to... turning to Ruiz, I don't... Ruiz does not stand for the proposition that even in the Rehab Act or the Title VII context that somebody standing in plaintiff's position, which is a contingent offer to be a completely different type of employee. So here, and there are a number of district court cases that we cited in our brief that have concluded that where what we're talking about is a district supervisor position, that's different than these CSO positions because the district supervisor position under the terms of the contract, and that's in C.3.4.1 of the contract, it expressly provides that the district supervisor is, quote, the primary point of contact for the government. So it's there under the terms of the contract, quite clearly Walden's representative to the marshal. So regardless of what one district court thought about whether other types of employees who are not specifically identified as Walden's point of contact, and in that same contract term, who have authority to make personnel decisions on behalf of Walden, not the U.S. marshals, those types of employees certainly are not the marshal's employees for purposes of inferring liability. And again, just to bring us back to the context here, Congress has not only not unequivocally waived its sovereign immunity with respect to whistleblower retaliation claims, but has in fact thought quite hard about them and set up two different statutory schemes that create different types of liability. So this court just need not reach that other question here. But again, we do think that there are multiple distinctions there. Should we be concerned that they could blackball people that make whistleblower claims from future retirement employee as CSOs that is very valuable to many former employees of all kinds of law enforcement? No, your honor, both because there's no reason to sort of but more fundamentally. And I have to take it as true. Even if we're sort of talking about, no, no, no, your honor, of course not. But even once we're sort of talking about the Bivens claims where he's making specific allegations, I think there it actually really highlights exactly why as the district court concluded there with respect to individual liability, even the complaint doesn't satisfy what one has to do even at the allegation stage. So here, yes, plaintiff identified one person, Chief Deputy Kelly at the U.S. Marshal Service. And this is based on his own complaint. One person at the U.S. Marshal Service who he says retaliated against him. He then says he brought a number of complaints about that person to the U.S. Marshals and that the U.S. Marshals in fact concluded they sided with him in every one of his own complaints. He was actually promoted. And after he retired from the marshals, again, according to the allegations of his own complaint, other people at the marshal service reach out to him to tell him about this position. There's simply no basis, you know, even within just taking. He says it. We have to I mean, revenge is a dish best served cold. The person had the power and the authority is what's been alleged. And we need some discovery to see if that actually happened or if this is some far fetched theory. No, your honor. For multiple reasons there, the district court had lacked subject matter jurisdiction over the claims he actually brought. And I do just want to bring us back to that, because regardless of whether or not the court might think in some other case, there's some sort of lurking unfairness here. That's not a reason to craft a new judicial remedy, whether we're talking about crafting some sort of new breach of contracts claim for which the United States haven't hasn't waived its sovereign immunity, whether we're talking about recognizing a new Bivens cause of action in a situation that is both markedly different from from circumstances that have been recognized before and would and have, as in contu, a legion of special factors counseling against recognizing that. And so if I might, unless your honor would like to continue discussing the breach of contract claim, you know, for the reasons we stated in the in the brief, he just he simply the district court simply didn't have to matter subject matter jurisdiction over that, whether that's because it's actually a CDA contract. And so contractors, employees can actually sue under that contract. He didn't. I mean, to the extent that he tries to raise a little Tucker Act claim now, it's not even in his complaint again, even after he had the opportunity to amend the complaint. And the United States pointed out that jurisdictional defect. The plaintiff has essentially conceded that he doesn't have a claim under the whistleblower statute under which he relied. And so that leaves us with the Bivens claim. And here we really think that that the court should affirm, affirm the dismissal against these two individuals who are being held under individual liability and and either under the ground that no new Bivens action should be recognized in their circumstance, both because it's markedly different from Davis v. Passman, because here we're not talking about a federal employee. We're talking about a contractor's employee. And then also for the secondary reason, which is something that seems to be arising in this court fairly frequently that the court has not yet ruled on, but has expressed at least in the First Amendment that it would absolutely be inappropriate for recognizing a new Bivens action, which is that this involves claims of retaliation, which has the Supreme Court recognized in Crawford L are easy to allege and hard to disprove. And for precisely that reason, it's also a special factor for weighing against finding a new Bivens cause of action here. And similarly, the other factors, as we've been discussing, is that Congress has thought long and hard about this and has repeatedly legislated in this area. So just like De La Paz, the very fact that Congress hasn't recognized a remedy against particular individuals is yet another reason actually to not imply a new Bivens remedy here. And then turning to the district court's rationale about these two individuals, if the court were to, like the district court, decide this on whether or not he's adequately pled a cause of action against the individuals, he absolutely has not. He's pled two facts against these particular individuals. The first is that one individual didn't say terminate him. One individual said, please suspend his sort of current contingent employment. And the other person said, he may not be the most qualified candidate. Now, neither of those two statements come anywhere close to doing what under Twombly and Iqbal he would have to do, which is to plead that these individuals had some sort of mandatory constitutional duty to him that they didn't undergo. And here, that doesn't come close. In particular, you know, for example, the comment that there might be a more qualified individual, just looking at the record, appears to be true. The contract requires that district supervisors have at least five years of supervisory experience at that contract being attached to the complaint, which is why I'm talking about it here. And based on the allegations in his own complaint, he actually only had three years of supervisory experience. So it certainly, you know, isn't any indication of some sort of in co-hate animus by either of those two individuals against plaintiff. And plaintiff, you know, can't use a Bivens suit to try and get sort of far-ranging discovery to say, I have no, that would turn Iqbal and Twombly on their head to say that I have no idea. I just have a suspicion that somewhere out there, somewhere in the marshal service doesn't like me, despite the fact that, you know, the chronology would suggest exactly the opposite, which is that all those claims were resolved against him. According to his complaint, he was also promoted. He was approached by other marshals employees about this job and to, and to say, you know, I get to go on a fishing expedition against the government to see whether somewhere, some, someone still had animus against me who had anything to do with this decision. If there are no further questions, the government asks that the district court's dismissal with prejudice be affirmed for the reasons stated in the brief. Thank you, Ms. Lopez. We have your argument. We have Mr. Threadgill next. Good afternoon. May it please the court. I'm Tim Threadgill on behalf of Metropolitan Security, who does business as Walden Security. So I've, as Mr. O'Donnell talked about, you'll hear both names, Metropolitan Security and Walden Security. Um, I think first and foremost, it's important to recognize that we come in the posture of a motion for summary judgment having been granted. The difference doesn't change the standard of review, but it does. I do want the judges to know that full discovery has taken place and so far as Walden is concerned. So, um, we're in a little bit different posture in that regard. The only claim against Walden that Mr. Davis is pursuing is a breach of contract claim. Mr. Davis, it's undisputed to Judge Englehart's question, is it was employed at will. He had an offer letter and it says the office, the offer is at will employment. It's not intended as an employment contract. It also says that it is contingent upon approval from the U.S. Marshal Service as well. And so those are another one of Judge Englehart's questions expressly in the, in the offer letter. Mr. O'Donnell and Mr. Davis don't seem to object to that. So what we have, and so far as Walden is concerned, is, um, an employment at will relationship. I've thought to myself many times throughout this case, what are we doing in this case? Because I've listened to the argument and I've listened to Mr. O'Donnell say we don't take issue with As far as, um, the contract itself, there's, there's briefing and it's a little muddled in my view as to where Walden stands on this, um, third party beneficiary issue and this joint employer issue. I'll start with the joint employer. As far as a joint employer, I mean, there's no doubt we employed Mr. Davis. We were his employer. It seems to me that the perhaps he is towards, towards the DOJ. In any event, it doesn't matter because there's no allegation that Walden has done anything wrong. So, I mean, there is a breach of contract claim, but in terms of any type of facts as to what Walden did or didn't do that Mr. Davis says they should not, he should not have done, it's just not there. To follow up on that earlier question, does Walden have other jobs? I'm not, I'm not aware of other jobs that Walden has other than these, these jobs. It's a great question. They are primarily a security service business. That's what they, what they do. They provide security to several United States Courts of Appeals. I suppose, theoretically, there's some administrative jobs because they have people who work in the headquarters who work in an administrative basis. But other than that, Your Honor, no, that's their business as I understand it. Their business is with the marshal service and that's who they're, that's their one and only client basically. They can't, they don't have a job for Joe's restaurant down the street to provide security to them, do they? Not that I'm aware of. And I do know that there are other employers that are similar to Walden who also provide. Like A-Call. That's exactly right. A-Call is a big one too. Y'all are the competitor, competitive businesses for this, this job. And I'm aware, correct, and I'm aware that A-Call has services beyond the United States Deputy Marshal Service. So that's why I hesitate to blanketly say that. But as far as I know, Walden is just the marshal service. Um, as far as the third, well, I would simply say this under the contract between the government and Walden, which has, as Lopez said, it's a contract between our two clients. There's, there's no duty in there that Walden owes to Mr. Davis, none whatsoever. So all of that to say, from Walden's perspective, we've engaged in full discovery. We've been fully briefed before the district court. I've not heard anything in Mr. O'Donnell's that we should have to remain in this lawsuit. And so we ask that, at least insofar as Walden's concerned, that summary judgment be affirmed. Thank you. We have your argument, Mr. Threadgill. Mr. O'Donnell, you save time for rebuttal, sir. Thank you, Judge Elrod. I want to address the subject matter jurisdiction issue first. That was not raised in the district court, which would explain why the subject matter jurisdiction issue sort of evolved later in the briefs. And the district court didn't rule on it because, again, it wasn't raised in the briefs. But we have to consider it, don't we? Yes, ma'am. That's absolutely true. And as referenced in the briefing, we're traveling under the Tucker Act, and the Tucker Act is concurrent jurisdiction over the CDA, which is the under $10,000, we can travel under a concurrent jurisdiction issue. And that's 1346, 28 U.S.C. 1346, which is the provision under the little Tucker Act, subsection A2. Now, the reason why that gives us jurisdiction to consider our contract claim against the Marshal Service is because Mr. Davis is not a contractor. The CDA does not apply, so under 1346, its reference to the procurement provisions as accepting the little Tucker Act's concurrent jurisdiction does not apply. And it therefore saves, as a matter of perspective from 1346, that its concurrent jurisdiction over the contract claim is preserved. Again, because Davis is not a contractor. He's an employee of a contractor. He's also assuming in his capacity as employee of the Marshal Service. So, you know, it's, again, a claim not by a contractor. It's a claim by employee of a contractor, or it's a claim by an employee of the Marshal Service under the we can look elsewhere for jurisdiction, and that's under the 1346 provisions. The reference to Mr. Davis as the contractor's representative is incorrect, and it also does not adequately explain or reference the contract revisions to the extent that they talk about the district supervisor's role in the administration of the contract. If you look at the same section that council referenced in the contract, section C3.4, it states that the district superintendent or supervisor shall serve as the primary point of contact. It doesn't reference that it's acting on behalf of the contractor, but even if it did there, we can construe that in an Iqbal-Twomley way, which I think is contrary to what the standard provides, but there are other revisions in that section that clearly delineate the fact the district supervisor acts under the direct supervision and control of the contracting officer, which is the Marshal Service. So, why is Walden still in this case? Well, Walden's in this case because of the, again, under the joint employer theory, you know, I'm not advocating that they suffer the sins of their father in that sense, but if we can show under the theory, under the Burton case, which is cited, that Walden was aware of the retaliatory action that we allege and failed to take steps to address that, then they have some complicity and some responsibility. So, joint employer gets us halfway there, but not all the way. We have to show and we allege that, you know, that there is some complicity there. We tried, as a matter of discovery, we asked Walden in a deposition and, of course, from their version, they were not aware of the specific reasons. They heard some things through the grapevine about Mr. Davis not being qualified or that there was some unalleged incident, I think is what the but it didn't get any more specific from that than that and it was not formal. It was informal grapevine talk. We asked the marshal service for their version. We want to know all the communications went back and forth with Walden about Mr. Davis's termination. We were stonewalled. I think the best thing we got was an opportunity to take a deposition on written questions of an limitations or offer on the deposition was limited to the communications that that individual engaged in with Walden. You need to wrap it up, Mr. O'Donnell. Your time is up. Okay. Well, that would be it. I think we've addressed all of the main issues in the case and I appreciate the court's attention. Thank you. We appreciate all the arguments today and this case is submitted. Thank you.